IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA ALDRIDGE,                                    CV. 05-1257-PK

                                                     OPINION AND ORDER

                       Plaintiff,

v.


YAMHILL COUNTY, a Political
Subdivision of the State of Oregon, JACK
CRABTREE, an individual, RONALD
HUBER, an individual, PAUL MAY, an
individual, and KENNETH SUMMERS, an
individual,

                       Defendants.

_____

PAPAK, Magistrate Judge:

        Plaintiff Jessica Aldridge filed this action against Defendant Yamhill County claiming:

(1) gender discrimination under 42 U.S.C. § 1983, 42 U.S.C. § 2000e-2 ("Title VII"), and Or.

Rev. Stat. § 659A.030; (2) age discrimination under Or. Rev. Stat. § 659A.030; (3) First

Amendment retaliation under 42 U.S.C. § 1983;  (4) retaliation under 42 U.S.C. § 2000e-3 and

Page 1 - OPINION & ORDER

Or. Rev. Stat. § 659A.030(1)(f); and (5) aiding and abetting unlawful practices under Or. Rev.

Stat. § 659A.030(1)(g).  Aldridge also brings the following claims against the four individual

defendants:  (1) gender discrimination under 42 U.S.C. § 1983; (2) First Amendment retaliation

under 42 U.S.C. § 1983; and, (3) aiding and abetting unlawful practices under Or. Rev. Stat. §

659A.030(1)(g).  Aldridge concedes summary judgment as to the Or. Rev. Stat. §

659A.030(1)(g) aiding and abetting claims.

     The court has original jurisdiction over Aldridge's federal claims pursuant to 28 U.S.C. §

1331.  The court has supplemental jurisdiction over Aldridge's state law claims pursuant to 28

U.S.C. § 1367.  The parties have consented to all proceedings and trial before a Magistrate Judge

(No. 8).

     Before the court is Defendants' Motion for Summary Judgment against all of Aldridge's

claims.  For the reasons that follow, Defendants' Motion for Summary Judgment (No. 20) is

granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

     Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary

judgment:

> if the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56.

///

     When considering a motion for summary judgment, the district court's role is not to

Page 2 - OPINION & ORDER

weigh the evidence, but merely to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Only after the moving party has made such a showing does the burden shift to the opposing party to show that a genuine issue of fact remains.  See Fed. R. Civ. P. 56(e).

To establish the existence of a genuine issue of material fact, the non-moving party must make an adequate showing as to each element of the claim on which the non-moving party will bear the burden of proof at trial.  See Celotex Corp., 477 U.S. at 322-23; see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).  The opposing party may not rest on conclusory allegations or mere assertions, see Taylor, 880 F.2d 1045; Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, see Anderson, 477 U.S. at 249-50; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  The evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to allow a rational jury to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Taylor, 880 F.2d at 1045.

///

///

Page 3 - OPINION & ORDER

FACTUAL BACKGROUND

Because this is a Motion for Summary Judgment, the court must view the facts in the

light most favorable to the non-moving party and draw all inferences in the non-moving party's

favor.  Reeves v. Sanderson Plumbing, 530 U.S. 133, 150 (2000).

Aldridge's Background with Yamhill County Sheriff's Office

Aldridge began working with the Yamhill County Sheriff's Office (the County) in 2001

as a Cadet Explorer.  Aldridge became a Reserve Deputy for the County in June 2003 after

graduating from the Agency Reserve Training Academy.  Before Aldridge could complete her

Field Training Evaluation Program, the County hired her to work full time patrolling the

Willamette River as a Marine Reserve Deputy for the summer of 2003.  From September 2003

through March 2004, Aldridge also worked part time for the sheriff's office civil division.

Aldridge was again hired as a Marine Reserve Deputy for the summer of 2004.  On more than

one occasion while working or volunteering with the County, Aldridge received praise and

commendation from her supervisors for doing good work.

In November 2003 the County was hiring a full-time patrol deputy.  Aldridge applied and

passed both the written and physical exams necessary to become qualified for an interview.  The

County ultimately hired an older male who had full-time work experience as a corrections

deputy.  Aldridge does not make any claims based on this November 2003 patrol deputy hiring

decision.

Hiring decisions are made by a consensus of the sheriff's administrative team.  For the

November 2003 patrol deputy decision that administrative team was made up of Defendants

Crabtree, Huber, May and Summers, as well as an executive assistant.

Page 4 - OPINION & ORDER

September 2004 Patrol Deputy Position

In September 2004 a patrol deputy position again became open.  Aldridge qualified for an interview.  Huber, May and Summers were the interview panel for this position.

During Aldridge's interview on September 1, 2004, Huber told Aldridge he was "concerned" about her application for the position for two reasons.  Huber's first concern was that Aldridge was "too young."  As for his second concern, Huber stated "you're a female" and then asked her how she would handle "working with the guys."  Aldridge responded that she had been successful working with the guys for over two years and that she did not believe her age or gender should matter.

Aldridge was upset by Huber's comments about her age and gender.  She called her Field Training Officer after the interview to talk about her concerns.  Then on September 7, 2004, Aldridge complained directly to Summers about Huber's comments.

Aldridge was not hired as a patrol deputy in September 2004.  Instead, Defendants Crabtree, Huber, May and Summers agreed to hire Richard Broyles.  Broyles was 35 years old when he was hired.  Aldridge was 23 years old at the time.

Each of the defendants took notes during the interviews.  Summers wrote each applicant's age on his interview notes.  May recorded the age of Aldridge, but not the other candidates.  The interview notes of Huber, who was concerned that Aldridge was "too young" and "female," were lost.

September 2004 Records Clerk Position

Aldridge applied for another position in September 2004, this time for police records clerk.  Defendants Huber, May and Summers again made up the interview panel.  Together with

Crabtree they decided to hire Carol Rogers. Rogers is a female who was 59 years old at the time she was hired. Aldridge was 23 years old.

While deliberating about their hiring decision, Summers remembers discussing with the other defendants that Rogers's "maturity" was an asset. May's interview notes reflect his opinion that Aldridge was "immature" while noting that Rogers showed "maturity." The interviewers did not record the candidates' ages on their interview notes.

<u>November 2004 Patrol Deputy Position</u>

The County filled another patrol deputy position in November 2004. Aldridge was not aware this position was open until after Robert Eubanks, a 27 year old male, was hired.

Aldridge emailed Summers to ask what the hiring process had been for this patrol deputy position. Aldridge remembered Summers telling her a new hiring process would begin after the September 2004 patrol deputy position had been filled and that she would be given an opportunity to apply for future positions. Before replying to Aldridge's email, Summers sent a draft email to the sheriff's administrative team with his proposed response. After making revisions to his first draft, Summers explained to Aldridge that the September 1, 2004 interviews for patrol deputy were conducted to fill two openings.

<u>After Aldridge's BOLI and EEOC Filings</u>

Aldridge filed a formal complaint with the Oregon Bureau of Labor and Industries ("BOLI") on December 21, 2004. She alleged she had been subjected to gender and age discrimination and retaliation for objecting to the discrimination. The complaint was co-filed with the Equal Opportunity Commission on December 22, 2004.

///

Page 6 - OPINION & ORDER

On February 12, 2005, the local newspaper published an article about Aldridge's BOLI complaint. On the same day, Aldridge began training in the jail under Huber's supervision.

Huber, who was already aware of the BOLI complaint, read the newspaper article. He also discussed the BOLI complaint with the jail supervisors, including Corporal Saunders, Corporal Sutter, Sgt. Dornan, Sgt. Hausman and Sgt.Schlegal.

Deputy Lux was Aldridge's Field Training Officer at the jail. Corporal Sutter told Deputy Lux to "be careful" around Aldridge and added "it wouldn't hurt if she didn't make it." Deputy Lux believed Corporal Sutter was asking him to "wash [Aldridge] out" of the program. When speaking to Deputy Johns, a female member of the jail staff, Corporal Sutter referred to Aldridge as "that fucking whore."

In April of 2005, Aldridge sent an email to Deputy Chris Fredinberg asking whether she could do marine patrol work on the weekends. Deputy Fredinberg replied that Summers "said you needed to finish your Jail" training first. Fredinberg then remarked, "[t]he only problem I see with that is that it is not a requirement for anyone else we would plug into the slot." Aldridge finished her jail training in May 2005. Since then, Aldridge has requested assignment with a patrol FTO and issuance of a bulletproof vest so she may work on patrol. A patrol FTO has not been assigned to Aldridge, and she has not been provided with a bulletproof vest.

<u>June 2005 Patrol Deputy Position</u>

Another patrol deputy position became available in June 2005. Aldridge applied and was interviewed on June 30, 2005. The interview panel was made up of Sgt. Svenson, Corporal Saunders and Karen Rogers. Four men were hired: (1) Tyler Tooley, age 22; (2) Kenneth Jackson, age 42; (3) Steven Wilkinson, age 43; and (4) Matthew Twitchell, age 28. Aldridge was 23 years old at the time, and she was not hired.

Page 7 - OPINION & ORDER

ANALYSIS

I.  Discrimination

Aldridge claims she was discriminated against on the basis of her gender and her age when she was not hired as a patrol deputy or police records clerk.  Instead, older males were hired as patrol deputies, and an older female was hired as police records clerk.

A. § 1983 Liability

As a threshold matter, the court will consider the defendants arguments that they are entitled to summary judgment on the § 1983 claims.

1. Against the Individual Defendants

The individual defendants urge the court to grant summary judgment in their favor on the § 1983 gender discrimination claims arguing Aldridge did not make a sufficient showing that these defendants were personally involved in the alleged discriminatory acts.  The individual defendants are correct that individual liability under § 1983 arises only upon a showing of personal participation by the defendants.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  However, Aldridge has met her burden with respect to the September and November 2004 patrol deputy positions.  The individual defendants were the very people who led the hiring process and arrived at the decisions Aldridge alleges were discriminatory.  Accordingly, to the extent Aldridge's § 1983 discrimination claim is based on the September and November 2004 patrol deputy positions, summary judgment is denied.

However, the defendants' point is well-taken with respect to the June 2005 hiring decisions.  A new interview panel was assembled for June 2005, and there is no evidence that Defendants Huber, May or Summers were involved in this round of hiring.  As to these three individual defendants, summary judgment is granted insofar as Aldridge's § 1983 gender

discrimination claim is based on the June 2005 hirings. Crabtree, on the other hand, was involved in the June 2005 hiring decisions. He met with the interview panel and together they decided who to hire. As a result, summary judgment on these grounds is denied as to Crabtree.

### 2. Against the County

The County can be held liable under § 1983 only if its custom or policy caused the deprivation of constitutional rights. <u>Monell v. New York City Dep't of Social Services</u>, 436 U.S. 658, 691 (1978). A "policy" can be inferred from a single decision made by the official responsible for establishing policy in that area of the county's business. <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). Thus, the key question here is whether county employment policy, as it pertains to the sheriff's department, is set by the County Commissioners or by the Sheriff.

<u>Pembaur</u> is particularly instructive in the analysis of this case. In <u>Pembaur</u>, the Court explained the implications of a governing county body delegating different responsibilities to a sheriff's department:

> [A] County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions *would* represent county policy and could give rise to municipal liability.

<u>Pembauer</u>, 475 U.S. at 482-83 n. 12 (emphasis in the original).

///

The instant case mirrors the scenario anticipated by Pembaur. Here, the Yamhill County Commissioners adopted employment policies and practices for some of its employees. However, Sheriff Crabtree had final authority to hire and fire his employees without review by the County Commissioners. More importantly, the County Commissioners delegated to Sheriff Crabtree the authority to adopt the official employment policies and practices for his own department that were separate from the rest of the county. These facts establish Sheriff Crabtree as a policymaker with respect to employment matters. Consequently his decisions can subject the County to § 1983 liability for the hiring decisions at issue in this case. While the County does not overtly concede this point, it does not argue otherwise. Accordingly, summary judgment on this basis is denied.

### B. Gender Discrimination

The standards are the same for discrimination claims under Title VII, 42 U.S.C. § 1983, and Oregon law[1]. See Keyser v. Sacramento City Unified School Dist., 265 F.3d 741, 754 (9th Cir. 2001); Pasco v. Mentor Graphics Corp., 199 F.Supp.2d 1034, 1052 (D. Or. 2001). Accordingly, the court will combine the analysis for the gender discrimination claims.

To survive summary judgment, Aldridge must first establish a prima facie case of discrimination. If Aldridge establishes a prima facie case, the burden shifts to the defendants to

---

[1]Although Oregon courts analyzing claims under Or. Rev. Stat § 659A.030 have rejected the McDonnell Douglas burden-shifting approach, it is nonetheless appropriate for federal courts to use the McDonnell Douglas approach in state law claims. See Snead v. Metropolitan Prop. & Cas. Ins. Co., 237 F.3d 1080, 1091-93 (9th Cir.), cert denied, 534 U.S. 888 (2001)(applying federal standard to state law claims when jurisdiction is based in diversity); Scott v. Sears, Roebuck and Co., 395 F.Supp.2d 961 (D. Or. 2005)(applying McDonnell Douglas burden-shifting where state law claim was based on  supplemental jurisdiction); Jamal v. Wilshire Management Leasing Corp., 320 F.Supp.2d 1060, 1075 (D. Or. 2004)(same); see also Durham v. City of Portland, 181 Or. App. 409, 425-26, 45 P.3d 998 (2002)(recognizing the difference between state and federal methodologies "lie more in form than in substance").

articulate a legitimate nondiscriminatory reason for its employment decision.  If the defendants

meet their burden of production, Aldridge must demonstrate that the defendants' proffered

reasons are pretext for a discriminatory motive.  McDonnell Douglas Corp. v. Green, 411 U.S.

792, 802-05 (1973);  Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir. 1985).

To establish a prima facie case of discrimination, a plaintiff must offer evidence that

"give[s] rise to an inference of unlawful discrimination."  Texas Dept. of Community Affairs v.

Burdine, 450 U.S. 248, 253 (1981).  Establishing a prima facie case in response to a motion for

summary judgment requires only "minimal" proof and "does not even need to rise to the level of

a preponderance of the evidence."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

The prima facie case may be established in one of two ways. A plaintiff can establish

discrimination with direct or circumstantial evidence of discriminatory intent.  Lowe, 775 F.2d at

1009.  Alternatively, a plaintiff can establish a prima facie case by showing that: (1) she belongs

to a protected class; (2) she applied and was qualified for the position; (3) she was rejected; and

(4) similarly situated men were treated more favorably, or the position was filled by a man.

McDonnell Douglas, 411 U.S. at 802.

1. September and November 2004 Patrol Deputy Positions

Aldridge relies on direct evidence to establish her prima facie case with respect to the

patrol deputy hiring decisions of September and November 2004.  Direct evidence is evidence

which, if believed, proves "discriminatory animus without inference or presumption."  Godwin

v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998).  Direct evidence in these cases

generally "consists of clearly sexist, racist, or similarly discriminatory statements or actions by

the employer."  Coghlan v. American Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005).

Huber's statements that he was "concerned" about Aldridge's application for patrol deputy

because she "is female," and his suggestion that she may have difficulty "working with the guys" constitutes direct evidence.  If believed, no additional inference or presumption is required to make a leap from these statements to discriminatory motive.

Defendants argue that Huber's comments can be dismissed because he was not a decisionmaker.  However, a person who makes discriminatory comments need only influence or participate in the employment decision, not be the one who makes the final decision. Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1040 (9th Cir. 2005).  Huber did participate in the decision by conducting interviews and consulting with Sheriff Crabtree and the other individual defendants to arrive at hiring decisions.  Referring to his hiring practice, Crabtree testified that "it's a consensus process" and the members of the sheriff's administrative team arrive at hiring decisions together.  According to Crabtree, it is reasonable to say that there were four decisionmakers.

The defendants argue that even if Huber is a decisionmaker, a single comment is insufficient to establish discriminatory motive at the summary judgment stage.  The authority cited by the defendants holds that comments that are ambivalent and not tied directly to the adverse employment decision are insufficient evidence of discriminatory motive.  Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993)("[w]e don't necessarily like grey hair here" comment was "uttered in an ambivalent manner and was not tied directly to [plaintiff's] termination"); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918-19 (9th Cir. 1996)("old timers" comment was ambivalent and not tied to termination).  Those cases are easily distinguishable from this one.  First, Huber's comments were not "uttered in an ambivalent manner."  The language he used was quite frank and directed squarely at Aldridge.  There is no evidence he made the comments in jest or that some other reasonable interpretation could be

attributed to them.  Second, the comments were directly related to the hiring process.  Huber's comments were not made in the distant past or in a setting where one would have to guess at their meaning.  He made the statements in Aldridge's interview.  In addition, Huber was inquiring whether her gender was an obstacle to her ability to perform the job for which she was applying.  Accordingly, Huber's comments are not stray remarks.  <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (comment that supervisor "did not want to deal with another female" was not a stray remark, and was tied to directly to the position plaintiff sought).  Huber's comments directly suggest the existence of gender bias with respect to the September 2004 and November 2004 patrol deputy positions, and Aldridge has met her burden to establish a prima facie case of discrimination with direct evidence.

### 2.  June 2005 Patrol Deputy Positions

There is no direct evidence of discriminatory animus related to the patrol deputy positions that were filled in June 2005.  A new round of interviews was conducted with an entirely new interview panel.  There is no evidence that Huber participated in or had any influence over these hiring decisions.  Although Aldridge contends that the individual defendants "had contact with" the new interview panel "prior to the interview," there is no suggestion that the panel was tainted with gender bias.

Nonetheless, Aldridge can make out a prima facie case of gender discrimination for this round of hiring using the four-factor <u>McDonnell Douglas</u> test.  Aldridge is a female who applied and was qualified for the June 2005 patrol deputy positions.  She interviewed for the positions and was not hired, but four males were hired to fill the openings.  That is sufficient evidence to meet the minimal burden of establishing a prima facie case with respect to the June 2005 positions.

Page 13 - OPINION & ORDER

Having established a prima facie case of gender discrimination for the 2004 and 2005 patrol deputy positions, the burden shifts to the defendants to articulate nondiscriminatory reasons for the alleged discrimination. McDonnell Douglas, 411 U.S. at 802-05. In this case, the defendants made no attempt to provide a legitimate explanation for their decisions.[2] Accordingly, summary judgment on the gender discrimination claims is denied.

### C. Age

Aldridge claims she was discriminated against based on her age in violation of ORS § 659A.030. Oregon law prohibits age discrimination against individuals between 18 and 70 years old. In addition to protecting older individuals from discrimination, Oregon state law prohibits discrimination on the basis of youth. Ogden v. Bureau of Labor, 68 Or.App. 235, 682 P.2d 802 (1984), *aff'd in part, rev'd in part and remanded,* 299 Or. 98, 699 P.2d 189 (1985). The same burden-shifting methodology and prima facie standards discussed in the gender discrimination context applies to Aldridge's state law age discrimination claim.[3]

### 1. The September and November 2004 Patrol Deputy Positions

Aldridge has presented evidence of discriminatory intent sufficient to create a prima facie case of age discrimination for the September and November 2004 patrol deputy positions. For the same reasons discussed in the gender discrimination analysis, Huber's September 1, 2004 comment that he was "concerned" that Aldridge was "too young" is direct evidence of

---

[2]With respect to the September and November 2004 patrol deputy positions, the direct evidence used to establish Aldridge's prima facie case serves a dual purpose. It is sufficient to not only establish her prima facie case, but also to create material issues of fact regarding whether defendants' reasons are pretextual. Wallis v. Simplot, 26 F.3d 885, 889-90 (9th Cir. 1994); Lowe v. City of Monrovia, 775 F.2d 998, 1008-10 (9th Cir. 1985). As a result, even if the defendants would have provided nondiscriminatory reasons for their hiring decisions, Aldridge could defeat a motion for summary judgment.

[3]See footnote 1, supra.

discriminatory animus.  There is additional circumstantial evidence that suggests age was improperly taken into account.  In interview notes, Summers wrote down the age of each candidate while May recorded Aldridge's age but not the ages of the other candidates.  While perhaps insubstantial standing alone, the notes about the candidates' ages becomes more significant when viewed in conjunction with Huber's comments.  See Lowe, 775 F.2d at 1006 (comments combined with other circumstantial evidence created inference of discrimination).

### 2. September 2004 Records Clerk Position

Aldridge also establishes a prima facie case for the records clerk hiring decision.  Huber's September 1, 2004 comments can still be considered evidence of discriminatory animus for this position.  The same decision-makers were involved in both sets of interviews, and the September 1, 2004 comments came just a few weeks before Aldridge was interviewed for the  records clerk position.  Although Huber's comments were made in the context of hiring a patrol deputy, a jury could infer that Huber believed Aldridge was too young to be considered for any position in the sheriff's department.  Moreover, because Huber was a decision-maker his comments are not required to be directly related to the hiring decision in question to be considered evidence of discriminatory animus.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 152 (2000) (age-biased comments by decision-maker not required to be made in direct context of the plaintiff's adverse employment action).  In addition to Huber's comments, the defendants also remember discussing the relative "maturity" of Rogers and Aldridge while deciding who to hire as records clerk.  May's interview notes also point out Rogers was "mature" while Aldridge was "immature."  This choice of words could, in most circumstances, be construed as benign and even highly relevant to the hiring decision.  However, when viewed in conjunction with Huber's comments and drawing all inferences in Aldridge's favor, a jury could find that the comparative

words used in this particular context actually referred to the applicant's ages.

In the alternative, Aldridge has satisfied the four-prong <u>McDonnell Douglas</u> prima facie test. Modified to accommodate Oregon's unique iterations, a plaintiff can establish a prima facie case of age discrimination by showing that: (1) she is between the ages of 18 and 70; (2) she applied and was qualified for the position; (3) she was rejected; and (4) an older person with similar qualifications filled the position. <u>See e.g.</u> <u>Sorosky v. Burroughs Corp.</u>, 826 F.2d 794, 803 (9th Cir. 1987). Aldridge was 23 years old when she applied for and was denied the post as records clerk. The defendants admit she was qualified for the position. Finally, a 59-year-old was hired to fill the position, and Aldridge submitted uncontested evidence of their respective similar qualifications. The defendants make no argument suggesting Aldridge and Rogers were not similarly qualified. As a result, Aldridge has established a prima facie case of age discrimination based on her youth.

### 3. June 2005 Patrol Deputy Positions

For the same reasons discussed in the context of Aldridge's gender discrimination claim, there is no direct evidence of age discrimination related to the patrol deputy positions that were filled in June 2005.

Aldridge also fails to make out a prima facie case of age discrimination under the <u>McDonnell Douglas</u> test for these hiring decisions. Aldridge meets the first three criteria because she was in a protected class, qualified, and not hired. However, she cannot satisfy the fourth element because the County hired someone younger than her. Hiring a younger applicant extinguished Aldridge's contention that the County discriminated against youthful candidates for this round of hiring. <u>See</u> <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 312 (1996)(under ADEA inference of discrimination cannot be drawn from replacement of one

worker with another worker insignificantly younger).  Because Aldridge cannot create an

inference of youth-based discrimination as to the June 2005 patrol deputy positions, summary

judgment is granted in favor of the County on this issue.

Having established a prima facie case of age discrimination for the 2004 patrol deputy

and records clerk positions, the burden shifts to the defendants to articulate nondiscriminatory

reasons for the alleged discrimination.  McDonnell Douglas, 411 U.S. at 802-05.  As with the

gender discrimination claims, the defendants made no attempt to provide a legitimate

explanation for their decisions related to the allegations of age discrimination. Accordingly,

summary judgment on these age discrimination claims is denied.

## II.  Retaliation

Aldridge contends that the County retaliated against her for protected speech under the

First Amendment, and for protected conduct in violation of Title VII and Or. Rev. Stat. §

659A.030.

### A.  First Amendment Retaliation

To make a prima facie case on this claim, a plaintiff must show: (1) she engaged in

speech that was of public concern; (2) the employer took an adverse employment action against

her; and (3) the speech was a substantial or motivating factor for the adverse action.  Thomas v.

City of Beaverton, 379 F.3d 802, 808 (9th Cir. 2004).  Under the first element, a public

employee's speech may involve a matter of public concern when it is spoken "as a citizen upon

matters of public concern" rather than "as an employee upon matters only of personal interest."

Connick v. Meyers, 461 U.S. 138, 147 (1983).

///

In this case, Aldridge argues that her protected speech consists of her complaint in

Page 17 - OPINION & ORDER

September 2004 to Summers, and the BOLI claim she filed in December 2004.  However, Aldridge's complaints were related only to her own employment situation.  Speech related to personnel grievances can be a matter of public concern, but this is generally only true when the employee is complaining about personnel matters pertaining to others, not to grievances where the plaintiff is complaining only about her own treatment.  See Thomas, 379 F.3d at 808; Beyer v. Baker School Dist. 5J, 2005 WL 351936, at *10 (D. Or. Feb. 14, 2005)(plaintiff's own sexual harassment complaint not a matter of public concern); Doherty v. Portland Community College, 2000 WL 1738862, at *17-18 (D. Or. Nov. 21, 2000)(complaint about plaintiff's own disability discrimination claim not a matter of public concern).

Aldridge does argue that filing her complaint with BOLI was motivated in part by a non-personal interest because she believed she "discovered the pattern and practice of discrimination in the Sheriff's Office."  However, the court finds no evidence that Aldridge raised complaints about systemic discrimination in the Sheriff's Office either when she complained to Summers or in her BOLI complaint.  To the extent she relies on her BOLI complaint as protected speech, the court does not find her BOLI complaint in the record. However, in reviewing the County's response to the BOLI complaint, which is in the record, it appears that Aldridge only claims that she was the victim of discrimination, and not that others have been discriminated against.  Because Aldridge's speech does not constitute a matter of public concern, summary judgment is granted in favor of the defendants on the First Amendment retaliation claim.

B.  Title VII and Oregon State Law Retaliation

The order and allocation of proof for disparate treatment cases under McDonnell Douglas also governs actions for retaliation under Title VII.  Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987).  This same burden-shifting scheme applies to claims under both state and federal

law.  Williams v. Federal Express Corp., 211 F. Supp. 2d 1257, 1264 (D. Or. 2002) (citing Lam v. Univ. of Hawaii, 40 F.3d 1551, 1559 & n.11 (9th Cir. 1994)).  Therefore, Aldridge's Title VII and state law retaliation claims will be considered together.

A plaintiff may establish a prima facie case of retaliation by showing:  (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) the employer's action is causally linked to the protected activity.  Yartzoff, 809 F.2d at 1375 (citations omitted).  The required elements of a prima facie case are the same for plaintiffs asserting retaliation claims under Title VII and under Oregon law.  Payne v. Apollo College-Portland, Inc., 327 F. Supp. 2d 1237, 1245 (D. Or. 2004).

Aldridge satisfies the first step of her prima facie case based on her complaints of discrimination.  Making a formal or informal complaint of discriminatory treatment constitutes protected activity for purposes of Title VII retaliation.  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  Aldridge complained of discrimination informally to her FTO on September 1, 2004, informally to Summers on  September 7, 2004, and formally in her BOLI complaint in December 2004.  As a result, Aldridge has shown she engaged in protected activity.

Addressing the second step of the prima facie case, Aldridge contends that her complaints were followed by a variety of adverse employment actions.  Foremost is her contention that the County failed to hire her for the patrol deputy and records clerk positions.  There is no question that "ultimate employment decisions" such as "hiring, firing, promoting, and demoting" are actionable adverse employment actions, and as a result Aldridge satisfies this prong of the test with respect to her failure to hire claims.  Ray, 217 F.3d at 1242.

///

Aldridge also alleges that the County kept her from gaining patrol experience by refusing

to issue her a bulletproof vest or assign a patrol FTO for her.[4]  The Ninth Circuit broadly

construes an adverse employment action to be anything that is reasonably likely to deter

employees from engaging in protected activity.  Ray, 217 F.3d at 1243.

> [A] wide array of disadvantageous changes in the workplace constitute adverse
> employment actions.  While "mere ostracism" by co-workers does not constitute
> an adverse employment action, see Strother v. Southern California Permanent
> Medical Group, 79 F.3d 859, 869 (9th Cir. 1996), a lateral transfer does.  In
> Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987), we held that "[t]ransfers
> of job duties and undeserved performance ratings, if proven, would constitute
> 'adverse employment decisions.'"

Id. at 1240-41.  Excluding an employee from meetings, seminars and positions that would have

made her eligible for advancement has constituted an adverse employment action.  Strother, 79

F.3d at 869.  Here, Aldridge has come forward with sufficient evidence to create an issue of fact

whether denying her a bulletproof vest and not assigning a patrol FTO would likely deter a

reasonable person from complaining about discrimination.

For the third element of her prima facie case, Aldridge must show that the adverse

employment action was caused by her complaints of discrimination.  As Ninth Circuit cases have

articulated, where "an adverse employment action follows on the heels of protected activity,"

causation can be inferred from timing alone.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,

1065 (9th Cir. 2002).  Time periods of three and eight months between protected speech and

alleged adverse employment actions were not too long to support an inference of retaliation in

the analogous prong of a First Amendment retaliation suit.  Coszalter v. City of Salem, 320 F.3d

968, 977 (9th Cir. 2003).  Here, Aldridge alleges that within a day of complaining to Summers

---

[4]Aldridge mentions a third potential adverse employment action as "an imposed time
period for her to complete her corrections time as a reserve."  Neither party provides sufficient
context or argument about this alleged adverse employment action.  The court will not speculate
as to the import or relevance of this allegation, so it will not be considered.

about Huber's comments, she learned she was not hired for the September 2004 patrol deputy position. She was denied another position within a few weeks, and a jury could even believe that she was not properly considered for the patrol deputy position that was filled in November 2004.

With respect to the June 2005 hirings and the bulletproof vest and patrol FTO, these actions, if believed, are also within an acceptable time frame to support an inference of causation. Coszalter, 320 F.3d at 977 (time periods of "three to eight months is easily within a time range that can support an inference of retaliation" in the analogous prong of a First Amendment retaliation suit).

Based on the foregoing, Aldridge has made out a prima facie case of retaliation. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant as in a disparate treatment case. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003). The defendant can defeat the inference of retaliation by articulating a legitimate, non-discriminatory for the adverse actions. The County has not offered an explanation for the adverse actions, and as a result summary judgment is denied.

### III.  Motions to Strike

Also pending before the courts are Defendants' Motions to Strike (No. 39). First, the defendants ask to strike the affidavit of Deputy Sarah Johns alleging it is inconsistent with her prior deposition testimony. The court has reviewed the affidavit and the deposition testimony and finds that the affidavit is not contradictory. The affidavit was used to make relatively minor clarifications and there were no substantive inconsistencies. Messick v. Horizon Indus. Inc., 62 F.3d 1227, 1231 (9th Cir. 1995). This motion is denied.

///

Page 21 - OPINION & ORDER

Second, the defendants move to strike evidence of the gender count of the Sheriff's Office because it is not scientific statistical evidence. This motion is denied. The court is not giving this information the weight it would give to a proper scientific statistical analysis. Nonetheless, the court can consider this information for what it is worth. See Lowe, 775 F.2d at 1007 (in conjunction with other facts, court considered that city had no black police officers at time plaintiff applied to support inference of discrimination). In any event, the court does not rely upon this evidence for Aldridge to survive summary judgment.

Third, the defendants move to strike Aldridge's conclusory statements about the hiring practices of the Sheriff's Office. She testified that "it is common knowledge" that the administration believes in the "good ol' boy" network and that "women have no place in law enforcement." Aldridge was unable to attribute these statements to any particular person within the Sheriff's Office and was unable to elaborate on the events that form the basis for these beliefs. As a result, Aldridge's testimony to this effect is conclusory, lacks foundation, and constitutes improper hearsay. This motion to strike is granted.

CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (No. 20) is GRANTED on the following issues or claims:

(1) Section 1983 gender discrimination claims against Defendants Huber, May and Summers, but only to the extent those claims are based on the June 2005 patrol deputy hiring decisions;

(2) Age discrimination claim against the County, but only to the extent that claim is based on the June 2005 patrol deputy hiring decisions;

(3) First Amendment retaliation claims brought under 1983 against all defendants;

(4) Or. Rev. Stat. § 659A.030(1)(g) aiding and abetting claims against all defendants.

Page 22 - OPINION & ORDER

The Motion for Summary Judgment is otherwise DENIED.

In addition, Defendants' Motion to Strike (No. 39) is GRANTED with respect to Motion No. 3, and otherwise DENIED.

Dated this 23rd day of June, 2006.


 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 23 - OPINION & ORDER